UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| CHANDRAPRAKASH HINGE, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 25-1097 (RBW) |
| TODD M. LYONS, Acting Director, United States Immigration and Customs Enforcement, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

The plaintiff, Chandraprakash Hinge, an Indian national currently residing in the United States as a student who gained lawful entry with an F-1 visa, brings this civil action against the defendant, Todd M. Lyons, in his capacity as the Acting Director of United States Immigration and Customs Enforcement ("ICE"), pursuant to the Administrative Procedure Act (the "APA"), 5 U.S.C. § 706(2), arising out of ICE's termination of the plaintiff's record in the Student and Exchange Visitor Information System ("SEVIS").[1]  See Complaint ("Compl.") at 1, ECF No. 1. Currently pending before the Court is the plaintiff's motion for a temporary restraining order or, in the alternative, a preliminary injunction.  See generally Application for Temporary Restraining Order or in the Alternative Preliminary Injunction ("Pl.'s Mot."), ECF No. 2.  Upon careful consideration of the parties' submissions,[2] the Court concludes for the following reasons that it

---

[1] Given the limited nature of the Court's brief grant of the plaintiff's motion for a temporary restraining order, the Court will not explain the F-1 visa, SEVIS, and related processes in detail here.  Once the Court has conducted a further hearing on the plaintiff's motion, the Court will explain these aspects of the case in more detail as they relate to the Court's ultimate determination regarding the plaintiff's motion.

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the plaintiff's Response to Order to Show Cause (ECF No. 4) ("Pl.'s Show Cause Response"), ECF No. 6; (2) the Defendant's Memorandum in Opposition to Plaintiff's Motion for Temporary Restraining Order ("Def.'s Opp'n"), ECF No. 8; and (3) the plaintiff's Notice of Additional Authority ("Pl.'s Notice"), ECF No. 9.

must grant in part and hold in abeyance in part the plaintiff's motion for a temporary restraining order and enter a temporary restraining order that will remain in effect only until the conclusion of a further hearing on the plaintiff's motion, which is currently scheduled for April 16, 2025, at 2:30 p.m.

Given the exigent circumstances and ambiguity as to the status of the plaintiff's F-1 visa, of which the Court was made aware through the parties' submissions and oral representations during the scheduling conference held on April 14, 2025, the Court has determined that an immediate Order is warranted to maintain the status quo until the conclusion of a further hearing on the plaintiff's motion for a temporary restraining order or a preliminary injunction. Specifically, the Court has maintained the status quo because it concludes that the record at this stage seems to indicate that final agency action has occurred and could result in the plaintiff being forced to leave the United States. Until government counsel is able to confer with the defendant and report back that (1) the interpretation being given by the plaintiff's university to the defendant's termination of the plaintiff's SEVIS record is incorrect, i.e., that his F-1 visa has been effectively terminated, and (2) the plaintiff—despite what has occurred—can remain employed in his Optional Practical Training ("OPT")[3] position until otherwise informed by the defendant, the Court concludes that irreparable harm is likely to occur if the plaintiff is forced to leave the country before being able to acquire the additional training he was pursuing prior to the defendant's termination of his SEVIS record. The confusion confronting the Court arises from the parties' conflicting positions, both in their filings and during oral argument, on what effect

---

[3]According to the defendant, "'OPT' must be 'directly related to [a student's] major area of study' in order to qualify as authorized training. [8 C.F.R.] § 214.2(f)(10). OPT allows eligible students to obtain temporary employment that is directly related to [their] major area of study. Id. § 214.2(f)(10)(ii)[.]" Def.'s Opp'n at 2 (first brackets in original). The defendant further represents that "[w]hile in school, a[] [foreign student's] status is based on that student pursuing a degree . . . . For post-degree completion OPT, there are limits on how long an individual can be unemployed . . . unless granted [an] extension[.]" Id. at 2–3.

the actions that ICE has already taken have on the plaintiff's student visa status. And, although the government takes exception to the plaintiff's position that his F-1 visa has been revoked, the Court cannot properly assess the government's positions—both that no final agency action has occurred and that the Court lacks jurisdiction to entertain the plaintiff's case—until the government counsel can definitively provide proof that that his position is correct, despite the fact that the evidence currently provided by the plaintiff seems to support the plaintiff's position.

I.   BACKGROUND

A. **Factual Background**

In 2020, the plaintiff, a student from India who applied for and obtained an F-1 visa, sought admission to study in the United States "at a lawful port of entry as an F-1 student." Compl. ¶ 10. The plaintiff represents that "the border agent did not admit [him] for a certain period of time. Rather, [he was admitted] for a 'duration of status.'" Id. ¶ 11 (citing 8 C.F.R. § 214.2(f)(5)(i)); see also Pl.'s Mot. at 2 (providing the statutory definition of "duration of status").[4] The plaintiff alleges that his university maintained a record on the plaintiff in the SEVIS database, as required by law, which was then used by ICE to monitor his status. See id. ¶¶ 14–19 (citing 8 U.S.C. § 1372). The plaintiff represents that, "[i]n July 2024, while working pursuant to his F-1 student status," he was arrested "for a class B misdemeanor reckless driving" offense, but "the charges were dismissed on April 9, 2025." Id. ¶¶ 26–30. The plaintiff alleges, "[w]ith no notice, on April 4, 2025," he received notification "that his SEVIS record had been terminated." Id. ¶ 31. He claims that the notification letter he received "reports that ICE

---

[4] During the April 14, 2025, hearing, the plaintiff represented that this is the duration articulated on his I-94 form, which the defendant represented supersedes an F-1 student's visa if the visa expires before the duration noted on the student's I-94 form.

3

terminated his SEVIS with the following note: TERMINATION REASON: OTHERWISE FAILING TO MAINTAIN STATUS – Individual identified in criminal records check and/or has had their VISA revoked.  SEVIS record has been terminated." Id. ¶ 32.  The plaintiff alleges that, as a result of his SEVIS record termination by ICE, his F-1 visa status has been revoked, and he is no longer able to lawfully work, which is his current status due to ICE's actions, and remain in the United States.  See id. ¶¶ 33–41.

### B. Procedural Background

On April 11, 2025, the plaintiff filed his Complaint.  See Compl. at 1.  He also filed at that time his motion for a temporary restraining order or, in the alternative, a preliminary injunction.  See Pl.'s Mot. at 1.

Later that day, the Court issued an Order directing the plaintiff to "show cause in writing . . . why the Court should not transfer this case to the United States District Court for the Northern District of Texas."  Order (Apr. 11, 2025) at 1, ECF No. 4.  The plaintiff filed his response to the Court's Order that evening.  See Pl.'s Show Cause Response at 1.[5]  The Court subsequently scheduled a hearing for April 14, 2025, and Ordered the defendant to "file his opposition, if any, to the plaintiff's" motion for a temporary restraining order "on or before April 13, 2025[.]"  See Minute ("Min.") Order (Apr. 11, 2025).  On April 13, 2025, the defendant filed his opposition to the plaintiff's motion for a temporary restraining order, see Def.'s Opp'n at 1, and, on April 14, 2025, the plaintiff filed a notice of supplemental authority concerning the implications of SEVIS record termination, see Pl.'s Notice at 1.

---

[5] The plaintiff argued that this District is a proper venue for the litigation of this case, which the government conceded during the April 14, 2025, hearing is correct.

On April 14, 2025, the parties appeared before the Court for a scheduling conference. During that hearing, the parties also made oral arguments as to whether a temporary restraining order should be issued by the Court. See Min. Entry (Apr. 14, 2025). Following that hearing, the Court issued an Order (1) granting the plaintiff's motion for a temporary restraining order "until the conclusion of a further hearing scheduled for April 16, 2025"; (2) ordering "that the defendant shall not commence proceedings to remove the plaintiff from the United States while this Order is in effect absent further Order from the Court"; and (3) scheduling a further hearing on the plaintiff's motion for a temporary restraining order for April 16, 2025. Min. Order (Apr. 14, 2025).

## II.   STANDARD OF REVIEW

### A.   Temporary Restraining Order

A temporary restraining order is an extraordinary remedy designed to prevent serious and imminent harm in exigent circumstances. Preliminary injunctions are also "extraordinary remed[ies] that should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion." Cobell v. Norton, 391 F.3d 251, 258 (D.C. Cir. 2004). In order to obtain a temporary restraining order or preliminary injunction, the moving party must demonstrate "(1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction were not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction." Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006). "These four considerations are factors, not elements."[6] Nat'l Council of Nonprofits v.

---

[6] In an element test, a litigant must prove a series of independent elements in order to establish a cause of action or defense. If a single element remains unproven, then the claim or the defense fails. However, as to a factor test, no
(continued . . .)

Off. of Mgmt. & Budget, ___ F. Supp. 3d ___, ___, 2025 WL 368852, at *9 (D.D.C. Feb. 3, 2025).  Therefore, "[a] district court must 'balance the strengths of the requesting party's arguments in each of the four required areas.'"  Id. (quoting CityFed Fin. Corp. v. Off. of Thrift Supervision, 58 F.3d 738, 747 (D.C. Cir. 1995)).  When, as here, a government entity is a party in the case, the third and fourth factors—that an injunction would not cause the parties substantial injury and that it would further the public interest—merge.  See Pursuing Am.'s Greatness v. Fed. Election Comm'n, 831 F.3d 500, 511 (D.C. Cir. 2016).

Although previously "[t]he four factors [were] typically [ ] evaluated on a 'sliding scale[]'" in this Circuit, Davis v. Pension Ben. Guar. Corp., 571 F.3d 1288, 1291 (D.C. Cir. 2009), the Supreme Court's decision in Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008), cast doubt on the propriety of that approach, see Save Jobs USA v. U.S. Dep't of Homeland Sec., 105 F. Supp. 3d 108, 112 (D.D.C. 2015) (noting that "[i]t is not clear whether th[e sliding scale] approach survives after Winter, which suggested that a likelihood of success on the merits must always be shown").  Indeed, "the [District of Columbia] Circuit has suggested that a positive showing on all four preliminary injunction factors may be required."  Holmes v. Fed. Election Comm'n, 71 F. Supp. 3d 178, 183 n.4 (D.D.C. 2014) (citing Davis v. Pension Ben. Guar. Corp., 571 F.3d 1288 (D.C. Cir. 2009)).  And at least some Circuit judges have "read Winter at least to suggest[—]if not to hold[—]'that a likelihood of success is an independent, freestanding requirement for a preliminary injunction[.]'"  Sherley v. Sebelius, 644 F.3d 388, 393 (D.C. Cir. 2011) (citing Davis, 571 F.3d at 1296 (Kavanaugh, J., concurring)).

---

individual factor is necessary to a claim or defense; each factor is taken into consideration and weighed against the other factors and the circumstances of the case.  See, e.g., Valspar Corp. v. E.I. Du Pont De Nemours & Co., 873 F.3d 185, 207 (3d Cir. 2017) (Stengel, C.J., dissenting) ("There is no one plus factor that is 'strictly necessary.'" (quoting In re Flat Glass Antitrust Litig., 385 F. 3d 350, 361 n.12 (2004))).

Similarly, Winter "makes clear[] [that] a mere 'possibility' of irreparable harm will not suffice." Cal. Ass'n of Private Postsecondary Schs. v. DeVos, 344 F. Supp. 3d 158, 167 (D.D.C. 2018) (quoting Winter, 555 U.S. at 22). Indeed, "a showing that irreparable injury is 'likely' is the sine qua non for obtaining a preliminary injunction—it is what justifies the extraordinary remedy of granting relief before the parties have had the opportunity fully to develop the evidence and fully to present their respective cases." Achagzai v. Broad. Bd. of Governors, No. 14-cv-768 (RDM), 2016 WL 471274, at *3–4 (D.D.C. Feb. 8, 2016). Therefore, "[a] movant's failure to show any irreparable harm is therefore grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief." Chaplaincy of Full Gospel Churches, 454 F.3d at 297.[7]

### III.    ANALYSIS

In his Complaint, the plaintiff alleges that: (1) the defendant's "termination of [the plaintiff's] SEVIS record and F-1 status is unlawful, arbitrary and capricious, and in violation of 5 U.S.C. §§ 706(2)"; and (2) "it is indeed a final agency action that harms [the plaintiff] for which there is no other adequate remedy in a court. 5 U.S.C. §§ 702, 704." Compl. ¶¶ 43–44. Therefore, the plaintiff seeks to have the Court, inter alia: (1) "[t]ake jurisdiction over this case"; (2) "[e]nter a temporary restraining order or preliminary injunction, enjoining the effect of ICE's termination of [the p]laintiff's SEVIS record and F-1 status during the course of this litigation;" (3) "[d]eclare ICE's termination decision unlawful;" and (4) "[e]nter an Order setting aside ICE's termination decision and enjoining ICE from terminating

---

[7] "The standard for a stay is the same as for a preliminary injunction." Comm. for a Constructive Tomorrow v. U.S. Dep't of Interior, No. 24-774 (LLA), 2024 WL 2699895, at *2 (D.D.C. May 24, 2024) (citing Nken v. Holder, 556 U.S. 418, 433–34 (2009)).

[the p]laintiff's SEVIS record and F-1 status without additional process in the future[.]" Compl. ¶¶ 51–56.

In his motion for a temporary restraining order, the plaintiff argues that (1) "ICE's SEVIS termination is unlawful," Pl.'s Mot. at 9; (2) he "will suffer irreparable harm without an injunction," id. at 16; and (3) the "[e]quities favor injunction," id. at 17. The plaintiff contends that "[b]ecause ICE's unlawful termination will cause [the p]laintiff irreparable harm, this Court must enjoin [the defendant's] termination of [the p]laintiff's SEVIS record and F-1 status." Id. at 2. In its opposition, the defendant argues, inter alia, that the termination of a SEVIS record is not a final agency action with legal consequences, and therefore there is no harm. See Def.'s Opp'n at 8–9.

A.     Whether the Plaintiff is Likely to Succeed on the Merits

Pursuant to the APA, judicial review of agency action is only appropriate in the case of "final agency action."[8] 5 U.S.C. § 704. Final agency action is defined as action that "mark[s] the consummation of the agency's decisionmaking and process" and determines "rights or obligations . . . from which legal consequences will flow." Bennett v. Spear, 520 U.S. 154, 177–78 (1997) (first quoting Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp., 333 U.S. 103, 113 (1948); and then quoting Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic, 400 U.S. 62, 71 (1970)).

In his opposition, and during the April 14, 2025, hearing, the defendant represented that ICE's termination of the plaintiff's SEVIS record did not mean that ICE had revoked the plaintiff's F-1 visa. See Def.'s Opp'n at 5 ("[The p]laintiff conflates the agency's action here—

---

[8] The APA prohibits courts from reviewing the "day-to-day operations" of agencies. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 899 (1990).

the termination of his SEVIS record—with the termination of his F-1 status."). Indeed, the defendant explicitly asserted during the April 14, 2025, hearing that the plaintiff's F-1 visa has not been revoked, and he will not accrue unlawful presence in the United States unless his status is terminated, which the defendant alleges has not yet occurred. The defendant also represented during the hearing that no regulation requires the plaintiff's university to terminate his OPT based solely on ICE's termination of his SEVIS record.[9] The defendant clarified that the plaintiff only needed an F-1 visa to lawfully enter the United States; then, in order to remain in the United States lawfully, he needs an I-94[10] that establishes the permitted duration of his stay. In the plaintiff's case, that duration is written as "for the duration of status," see Compl. ¶ 11, and the defendant contends that since the plaintiff's status has not been revoked, he is not in the United States unlawfully. However, the plaintiff argued during the April 14, 2025, hearing, that the phrase "for the duration of status" refers to the duration of active status in the SEVIS database; thus, the plaintiff alleges, ICE effectively terminated the plaintiff's legal nonimmigrant status in this country when it terminated his SEVIS record and cited his "failure to maintain

---

[9] In support of this assertion, the defendant cited the tenth paragraph of the Declaration of Andre Watson, which the defendant filed as an attachment to his opposition. See Def.'s Opp'n, Exhibit ("Ex.") 1 (Declaration of Andre Watson) at 5, ECF No. 8-1 ("Terminating a record in SEVIS does not terminate an individual's nonimmigrant status in the United States. The statute and regulations do not provide [the Student Exchange Visitor Program ('SEVP')] the authority to terminate nonimmigrant status by terminating a SEVIS record, and SEVP has never claimed that it had terminated [the plaintiff's] nonimmigrant status. Furthermore, the authority to issue or revoke visas for nonimmigrant students like [the plaintiff] lies with the Department of State, not SEVP. Terminating a record within SEVIS does not effectuate a visa revocation.").

[10] According to the United States Citizen and Immigration Services ("USCIS") website, "[a]ll persons need a Form I-94 except U.S. citizens, returning resident aliens, aliens with immigrant visas, and most Canadian citizens visiting or in transit. Air and sea travelers will be issued I-94s during the admission process at the port of entry." In order to obtain a Form I-94, "[a] Customs and Border Protection ('CBP') officer attaches [a] Form I-94 to the nonimmigrant visitor's passport upon entry to the U.S. The visitor must exit the U.S. on or before the departure date stamped on the Form I-94." U.S. Citizenship and Immigr. Serv., Form I-94, Arrival/Departure Record, Information for Completing USCIS Forms, U.S. CITIZENSHIP AND IMMIGR. SERV., https://www.uscis.gov/forms/all-forms/form-i-94-arrivaldeparture-record-information-for-completing-uscis-forms (last visited Apr. 15, 2025).

status" as its reason for doing so.  Moreover, as the plaintiff contended during the April 15, 2025, hearing, he cannot remain in the United States legally if he is not either studying or working in an OPT position.  See also Pl.'s Mot., Exhibit ("Ex.") 2 (Declaration of Brad Banias) at 1, ECF No. 2-2 ("ICE's termination of Plaintiff's SEVIS and F1 status prevents him from continuing his OPT program").  And, if the plaintiff's university was required to terminate his OPT authorization and enrollment, as it has done, due to ICE's termination of the plaintiff's SEVIS record, then the plaintiff cannot lawfully remain in the United States and will be subject to removal proceedings if he does not first leave voluntarily.

Accordingly, given that on the current record the plaintiff has established a likelihood of success on the merits and the lack of verifiable information offered by the defendant rebutting his argument in regards to (1) the effect of ICE's termination of the plaintiff's SEVIS record on the plaintiff's lawful nonimmigrant status in the United States, and (2) whether the plaintiff's university was required to terminate his authorization to study and work in the United States as a result of ICE's SEVIS termination, the Court cannot determine on the current record whether final agency action has occurred in this case.  If the plaintiff's lawful status in the United States has been revoked, whether directly by ICE or indirectly by his university's correct interpretation of the action it is required to take in response to ICE's actions, that revocation will affect the plaintiff's "rights or obligations . . . from which legal consequences will flow."  Bennett, 520 U.S. at 177–78.  Thus, the Court concludes that it must grant the plaintiff's request for a temporary restraining order until a further status conference is held in order to allow government counsel to address these ambiguities after conferring with the agency he represents.[11]

---

[11] The Court expressed its concern during the April 14, 2025, hearing that although government counsel stated that the plaintiff's F-1 visa had not been revoked, government counsel expressed uncertainty as to whether the agency itself would confirm his representation on this point.

10

### B.      Whether the Plaintiff has Sufficiently Alleged Irreparable Injury

In order to establish irreparable injury, a party must meet a "high standard." England, 454 F.3d at 297. The alleged injury "must be both certain and great," "actual and not theoretical," and "of such imminence that there us a 'clear and present' need for equitable relief." Id. (quoting Wis. Gas Co. v. Fed. Energy Regul. Comm'n, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam)). Furthermore, the alleged injury "must be beyond remediation"; in other words, the party alleging irreparable injury must establish that "[t]he possibility [of] adequate compensatory or other corrective relief . . . at a later date . . . weighs heavily against a claim of irreparable harm." Id. at 297–98. (quoting Wis. Gas Co., 758 F.2d at 674). Importantly, "obstacles [that] unquestionably make it more difficult for the [plaintiff] to accomplish its primary mission . . . provide injury for the purposes . . . [of establishing] irreparable harm." League of Women Voters of the U.S. v. Newby, 838 F.3d 1, 9 (D.C. Cir. 2016). "For some, these are harms for which 'there can be no do over and no redress." Nat'l Council of Nonprofits, ___ F. Supp. 3d ___, ___, 2025 WL 368852, at *13 (quoting Newby, 838 F.3d at 9).

Here, the plaintiff is an Indian national who sought legal entry into the United States by working with his consulate to obtain an F-1 visa and gaining admission to an American university. See Pl.'s Mot. at 6. During the April 14, 2025, hearing, the plaintiff represented that, once here, he obtained an I-94, valid "for the duration of status[,]" see Compl. ¶ 11, and has most recently been working through OPT, see Pl.'s Mot., Ex. 3 (Declaration of Chandraprakash Hinge) at 1, ECF No. 2-3. The plaintiff's university, as part of its obligations associated with enrolling and hosting foreign students, maintains SEVIS records on all such students while they are lawfully studying or working in the United States. See Pl.'s Mot. at 5. ICE terminated the plaintiff's SEVIS record, and the plaintiff's university responded to that termination by revoking his authorization to work. Id. at 7. If the plaintiff cannot work or study, he cannot remain in the

11

United States legally, and he will therefore either be subjected to removal proceedings or forced to return to India on his own, which would require him to pursue anew the entire process for lawful readmission to the United States if he wishes to complete his training. The plaintiff further alleges that if he is, in fact, accruing unlawful time in the United States following the termination of his SEVIS record, that time will work against him should he attempt to initiate the process to lawfully return to the United States in order to complete his training, and that might prevent him from doing so. See Compl. ¶ 38.

In light of the plaintiff's representations, and without definitive information to the contrary from the defendant, the Court concludes that "adequate compensatory or other corrective relief . . . at a later date" will be insufficient to remedy the plaintiff's alleged injury. England, 454 F.3d at 297–98. Furthermore, if ICE's alleged actions render the plaintiff unable to complete his educational training, the Court deems that consequence to be a "harm[] for which 'there can be no do over and no redress." Nat'l Council of Nonprofits, ___ F. Supp. 3d ___, ___, 2025 WL 368852, at *13 (quoting Newby, 838 F.3d at 9). Therefore, the Court concludes that, based on the current record, the plaintiff has established irreparable harm.[12]

### IV.    CONCLUSION

For the foregoing reasons, the Court concludes that it must grant the plaintiff's motion for a temporary restraining order until the conclusion of a further hearing scheduled for April 16, 2025.

**SO ORDERED** this 15th day of April, 2025.[13]

REGGIE B. WALTON<br>United States District Judge

---

[12] Because the Court concludes that the plaintiff has carried his burden by satisfying the first two factors for a temporary restraining order, the Court will not address the other two factors at this time.

[13] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.

12