**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

———————————————————
)
CHANDRAPRAKASH HINGE,                    )
)
              Plaintiff,        )
)
        v.                                  )      Civil Action No. 25-1097 (RBW)
)
TODD M. LYONS,                           )
Acting Director, United States Immigration  )
and Customs Enforcement,                 )
)
              Defendant.        )
)
———————————————————

**MEMORANDUM OPINION**

The plaintiff, Chandraprakash Hinge, an Indian national currently residing in the United States as a student who gained lawful entry with an F-1 visa, brings this civil action against the defendant, Todd M. Lyons, in his capacity as the Acting Director of United States Immigration and Customs Enforcement ("ICE"), pursuant to the Administrative Procedure Act, 5 U.S.C. § 706(2), arising out of ICE's termination of the plaintiff's record in the Student and Exchange Visitor Information System ("SEVIS"). See Complaint ("Compl.") at 1, ECF No. 1. Currently pending before the Court is the defendant's motion to dismiss. See Defendant's Motion to Dismiss ("Def.'s Mot."), ECF No. 25. Upon careful consideration of the parties' submissions,[1] the Court concludes for the following reasons that it must deny the defendant's motion.

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the plaintiff's Application for Temporary Restraining Order or in the Alternative Preliminary Injunction, ECF No. 2; (2) the plaintiff's Notice of Additional Authority; ECF No. 9; (3) the plaintiff's Notice of Supplemental Authority, ECF No. 12; (4) the plaintiff's Response to Motion to Dismiss ("Pl.'s Opp'n"), ECF No. 26; (5) the defendant's Reply ("Def.'s Reply"); ECF No. 30; and (6) the plaintiff's Notice of Supplemental Authority, ECF No. 30.

## I.     BACKGROUND

**A.     The Purpose and Operation of the SEVIS**

ICE operates the Student Exchange and Visitor Program ("SEVP") to verify that international students on F-1 visas do not "overstay their status." Compl. ¶ 14.  Through SEVP, the government "certifies schools to accept F-1 students" and, in exchange, "schools must agree to report, update, and maintain information about each F-1 student in SEVP's Student and Exchange Visitor Information System or SEVIS", which is an "online database housing data about all F-1 students." Id. ¶¶ 14–15.  Such data includes the student's school start date, course progress, and graduation date. Id. ¶ 16.  ICE monitors SEVIS to verify that F-1 students are maintaining their student status. See id. ¶ 17.  If a student fails to maintain his or her status, ICE can terminate the student's SEVIS record and, with it, the student's F-1 status. Id. ¶¶ 17–19. Without a SEVIS record and F-1 status, the student would be barred from continuing his or her studies in the United States. See id. ¶¶ 20–25.

International students can fail to maintain their status in several ways. See id. ¶ 21.  First, a student may fail to maintain status by not making "normal progress toward completing a course of study, such as [by] withdrawing early, never showing up at school, or graduating." Id. ¶ 22. Second, a student may fail to maintain status by committing certain actions statutorily defined as a failure to maintain status, including engaging in "unauthorized employment," "fail[ing] to provide full and truthful information requested by [the Department of Homeland Security ("DHS")]," and being "convict[ed] in a jurisdiction in the United [S]tates for a crime of violence for which a sentence of more than one year imprisonment may be imposed." Id. ¶ 23 (quoting 8 C.F.R. §§ 214.1(e)–(g)).  Third, "ICE and SEVP can take certain steps to terminate the F-1 student's SEVIS and F-1 status" by revoking a previously granted waiver under 8 U.S.C.

§ 1182(d)(3) or (4); by introducing a "private bill to confer permanent resident status" to the F-1 student; or "pursuant to notification in the Federal Register[] on the basis of national security, diplomatic, or public safety reasons."  Id. ¶ 24 (quoting 8 C.F.R. § 214.1(d)).

**B.    Factual Background**

In 2020, the plaintiff, a student from India who applied for and obtained an F-1 visa, sought admission to study in the United States "at a lawful port of entry as an F-1 student." Compl. ¶ 10.  The plaintiff represents that "the border agent did not admit [him] for a certain period of time.  Rather, [he was admitted] for a 'duration of status.'"  Id. ¶ 11 (citing 8 C.F.R. § 214.2(f)(5)(i)); see also id. ¶ 12 (providing the statutory definition of "duration of status").[2] The plaintiff enrolled at the University of Texas at Arlington to pursue a PhD degree in Mechanical Engineering.  Id. ¶ 9.  He alleges that his university maintained a record on him in the SEVIS database, as required by law, which was then used by ICE to monitor his status at the university.  See id. ¶¶ 14–19 (citing 8 U.S.C. § 1372).  The plaintiff represents that, "[i]n July 2024, while working pursuant to his F-1 student status," he was arrested "for a class B misdemeanor reckless driving" offense, but "the charges were dismissed on April 9, 2025."  Id. ¶¶ 26–30.  However, the plaintiff alleges, "[w]ith no notice, on April 4, 2025," he had been informed "that his SEVIS record had been terminated."  Id. ¶ 31.  He claims that the notification letter he received "reports that ICE terminated his SEVIS with the following note: TERMINATION REASON: OTHERWISE FAILING TO MAINTAIN STATUS – Individual identified in criminal records check and/or has had their VISA revoked.  SEVIS record has been

---

[2] "Duration of status is defined as the time during which an F-1 student is pursuing a full course of study at an educational institution certified by SEVP for attendance by foreign students, or engaging in authorized practical training following completion of studies, except that an F-1 student who is admitted to attend a public high school is restricted to an aggregate of 12 months of study at any public high school(s).  An F-1 student may be admitted for a period up to 30 days before the indicated report date or program start date listed on the Form I-20 or successor form. The student is considered to be  maintaining status if the student is making normal progress toward completing a course of study."  8 C.F.R. § 214.2(f)(5)(i).

terminated." Id. ¶ 32.  The plaintiff alleges that, as a result of ICE terminating his SEVIS record, his F-1 visa status was revoked, and he was therefore unable to lawfully work and remain in the United States.  See id. ¶ 33–41.

The plaintiff asks this court to declare the SEVIS record termination unlawful, enjoin the termination, and enter an order setting aside ICE's termination decision and enjoining ICE from "terminating [his] SEVIS record and F-1 status without additional process in the future." Id. ¶¶ 52–54.

**C.    Procedural Background**

On April 11, 2025, the plaintiff filed his Complaint.  See Compl. at 1.  He also filed at that time his motion for a temporary restraining order or, in the alternative, a preliminary injunction.  See Pl.'s Mot. at 1.  Following a series of hearings, the Court granted in part and denied in part the plaintiff's motion.  See Memorandum Opinion, April 15, 2025, ECF No. 10; Order, April 15, 2025, ECF No. 11; Order, April 17, 2025, ECF No. 14.  Specifically, the Court ordered that the defendant "shall return the plaintiff's record in [SEVIS] to the Active status" and that the defendant "may not change or otherwise modify the plaintiff's record in SEVIS solely on the basis of his arrest on July 3, 2024 for a violation of the Texas Transportation Code § 545.401(b) and subsequent dismissal of [that] charge on April 9, 2025 by the Dallas County Criminal Court."  Order, April 17, 2025, at 2, ECF No. 14.

On July 31, 2025, the defendant filed his motion to dismiss based on Federal Rule of Civil Procedure 12(b)(1).  Def.'s Mot. at 1.  According to the defendant, "ICE reinstated [the plaintiff's] SEVIS record in compliance with this Court's order," "ICE promulgated a new policy . . . concerning the termination of SEVIS records," the defendant "made several representations in this and other cases that ICE has no plans under its new policy to re-terminate [the plaintiff's]

4

SEVIS record based solely on the [National Crime Information Center ("NCIC")] record that led to the April 2025 termination," and "ICE provided the plaintiff with a letter regarding the retroactive effect of his SEVIS record reinstatement." Def.'s Mot. at 2. The defendant now argues that "the Court lacks subject-matter jurisdiction as this matter is moot and there is no justiciable Article III 'case' or 'controversy' between the parties." Id. The plaintiff filed an opposition on August 14, 2025, arguing that his case "triggers the voluntary cessation exception to mootness and, therefore, this Court should deny ICE's vexatious motion." Pl.'s Opp'n at 2. The defendant replied on August 22, 2025, arguing that the plaintiff is now attempting to expand the relief sought in his complaint by challenging ICE's new policy and disputing the applicability of the voluntary cessation exception. Def.'s Reply at 3, 7.

## II.    STANDARD OF REVIEW

Federal district courts are courts of limited jurisdiction, Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994), and therefore, "[a] motion for dismissal under [Federal Rule of Civil Procedure] 12(b)(1) 'presents a threshold challenge to the [C]ourt's jurisdiction[.]'" Morrow v. United States, 723 F. Supp. 2d 71, 75 (D.D.C. 2010) (Walton, J.) (quoting Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987)). Thus, the Court is obligated to dismiss a claim if it "lack[s] [ ] subject matter jurisdiction[.]" Fed. R. Civ. P. 12(b)(1). And, because "it is to be presumed that a cause lies outside [ ] [the Court's] limited jurisdiction," Kokkonen, 511 U.S. at 377, the plaintiff bears the burden of establishing by a preponderance of the evidence that a district court has subject matter jurisdiction, see Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992).

In deciding a motion to dismiss based upon lack of subject matter jurisdiction, the Court "need not limit itself to the allegations of the complaint." Grand Lodge of the Fraternal Order of

Police v. Ashcroft, 185 F. Supp. 2d 9, 14 (D.D.C. 2001).  Rather, the "[C]ourt may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case."  Scolaro v. D.C. Bd. of Elections & Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); see also Jerome Stevens Pharms., Inc. v. Food & Drug Admin., 402 F.3d 1249, 1253 (D.C. Cir. 2005).  Additionally, the Court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged[.]'"  Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Corp., 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)).  However, "the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim."  Grand Lodge, 185 F. Supp. 2d at 13–14 (alterations in original) (citation and internal quotation marks omitted).

### III.    ANALYSIS

The defendant argues that because the plaintiff's SEVIS record has been reinstated "[t]here is no more relief for this Court to award on the allegations in the complaint."  Def.'s Mot. at 2.  According to the defendant, the only issue before the Court is whether the plaintiff's SEVIS record will be re-terminated based on the same NCIC criminal record that was the basis for the termination.  Id. at 13.  The defendant claims that the case is now moot because they have provided "sufficient assurance" that they will not re-terminate the plaintiff's record on that basis. Id.  In support of this position, the defendant relies on a statement contained in a declaration from Andre Watson, the Assistant Director of the National Security Division for Homeland Security Investigations.  See Def.'s Mot. at 4 (quoting Declaration of Andre Watson ("Watson Decl.") ¶ 6, ECF No. 28-1).  According to Mr. Watson, "ICE has no plans under its new SEVIS

6

policy to re-terminate the plaintiff['s] SEVIS record based solely on the NCIC records that led to its initial termination."[3]  Watson Decl. ¶ 6.

The plaintiff responds that "ICE cannot carry its heavy burden to demonstrate mootness based on its voluntary cessation because ICE's new 'policy' claims authority to terminate SEVIS records for extra-regulatory, ultra vires reasons."  Pl.'s Opp'n at 2–3.  The plaintiff also claims that he "has a reasonable expectation that ICE will again terminate SEVIS records and F1 status for extra-regulatory reasons" because "ICE continues to attack student visa holders."  Id. at 3.

"A case is moot if a decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future."  Pub. Citizen, Inc. v. FERC, 92 F.4th 1124, 1128 (D.C. Cir. 2024) (internal quotation marks and citation omitted).  This occurs when "the court can provide no effective remedy because a party has already obtained all the relief that it has sought."  Schmidt v. United States, 749 F.3d 1064, 1068 (D.C. Cir. 2014) (cleaned up).  Moreover, "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice."  Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 189 (2000).

Thus, under the "voluntary cessation" doctrine, "[the] defendant's voluntary decision to cease the activities that gave rise to the suit extinguishes the live controversy [] only if (i) there is no reasonable expectation that the alleged violation will recur, and (ii) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."  Citizens for

---

[3] Throughout its motion to dismiss, the defendant cites to both Mr. Watson's April 13, 2025 declaration, which was attached as Exhibit A to the Defendant's Memorandum in Opposition to Plaintiff's Motion for Temporary Restraining Order, ECF No. 8, and to Mr. Watson's May 6, 2025 declaration, which was attached as Exhibit C to the defendant's Reply in support of its motion to dismiss, ECF No. 28.  The defendant refers to both declarations as the "Watson Decl." and cites both as ECF No. 8-1.  The above quotation is from Mr. Watson's May 6, 2025 declaration, which is part of the record at ECF No. 28-1.

Resp. & Ethics in Wash. v. Wheeler, 352 F. Supp. 3d 1, 13 (D.D.C. 2019). The party asserting mootness bears the heavy burden of showing that the challenged conduct cannot reasonably be expected to recur. See Friends of the Earth, Inc., 528 U.S. at 170. This burden, when the government is a party, may be met when "the Government has provided 'sufficient assurance' that it will not" re-engage in the challenged action, Moharam v. Transp. Sec. Admin., 134 F.4th 598, 608 (D.C. Cir. 2025) (quoting Porup v. Cent. Intel. Agency, 997 F.3d 1224, 1233 (D.C. Cir. 2021)), such as by the "use of the words 'required' and 'mandates' in [a] Declaration" describing policy changes, Porup, 997 F.3d at 1232. Mr. Watson's declaration does not provide this level of assurance. See Watson Decl. ¶¶ 4–8. Rather than "requiring" or "mandating" a change, Mr. Watson's declaration states only that ICE currently has "no plans" to re-terminate the plaintiff's SEVIS record based on the NCIC record that led to its initial termination. Id. ¶ 6.

Moreover, even if Mr. Watson's declaration provided sufficient assurance that the defendant will not re-terminate the plaintiff's SEVIS record based solely on the NCIC records, the plaintiff is still vulnerable to some other termination for what he describes as "ultra vires" reasons. Pl.'s Opp'n at 2–3. Although the defendant has reinstated his SEVIS record for now, the defendant explicitly states that "additional information might cause the Government to once again terminate [the plaintiff's] SEVIS record." Def.'s Mot at 13. The defendant claims that any such decision would be a "distinct legal wrong" beyond what the plaintiff alleged in the Complaint because it would not be a termination based on the plaintiff's NCIC record. See id. But in the Complaint, the plaintiff sought an order "enjoining ICE from terminating [his] SEVIS record and F-1 status without additional process in the future." Compl. ¶ 54. Because the Court is not convinced that Mr. Watson's affidavit provides sufficient assurance that ICE will not terminate the plaintiff's SEVIS record and F-1 status without additional process as demanded by

8

the plaintiff in the future, it joins the numerous other district courts that have already found that ICE's new SEVIS policy does not moot the plaintiff's claim. See, e.g., Bushireddy v. Lyons, No. 25-1102 (SLS), 2026 WL 759480, at *5–7 (D.D.C. Mar. 18, 2026); Patel v. Lyons, No. 25-CV-01096 (ACR), 2026 WL 587640, at *7–9 (D.D.C. Feb. 27, 2026); Zhou v. Lyons, No. 2:25-CV-02994-CV (SKX), 2025 WL 3691816, at *6 (C.D. Cal. Nov. 6, 2025); Roe v. Noem, No. CV 25-40-BU-DLC, 2025 WL 1382930, at *3–4 (D. Mont. May 13, 2025); Ortega Gonzalez v. Noem, No. 6:25-cv-00622-MC, 2025 WL 1355272, at *4–5 (D. Or. May 9, 2025); Du v. United States Dep't of Homeland Sec., No. 3:25-cv-644 (OAW), 2025 WL 1549098, at *6 (D. Conn. May 31, 2025).

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that it must deny the defendant's motion to dismiss.

**SO ORDERED** this 20th day of March, 2026.[4]

REGGIE B. WALTON
United States District Judge

---

[4] The Court will contemporaneously issue an Order consistent with the Memorandum Opinion